1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10
11
12   ROBERT JOHNSON,              )    Case No. CV 14-1598-RGK (KK)
                                  )
13              Plaintiff,        )
                                  )    FINAL REPORT AND
14       v.                       )    RECOMMENDATION OF UNITED
                                  )    STATES MAGISTRATE JUDGE
15   RAMAN PATEL, et. al.,        )
                                  )
16              Defendants.       )
                                  )
17   _____  )
18
19        This Final Report and Recommendation is submitted to the Honorable R. Gary
20   Klausner, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order
21   05-07 of the United States District Court for the Central District of California.
22
23                              **I.**
24                **SUMMARY OF RECOMMENDATION**
25        Plaintiff Robert Johnson ("Plaintiff"), a state prisoner proceeding pro se, has filed a
26   First Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983 ("Section 1983"),
27   against five defendants: (1) Dr. Raman Patel, M.D., a doctor at Lancaster Medical Center;
28   (2) D. Drayton, a Correctional Officer at California State Prison, Los Angeles County

                                   1

1  ("CSP-LAC")[1]; (3) J. Garcia, a Correctional Officer at CSP-LAC; (4) Lawson, a

2  Correctional Officer at CSP-LAC; and (5) Rush, a Registered Nurse at CSP-LAC.

3  Defendants Drayton, Garcia, Lawson, and Rush are all employees of the California

4  Department of Corrections and Rehabilitation ("CDCR").  FAC at 9.[2]  Defendant Dr.

5  Patel is a private physician under contract with CDCR to provide medical treatment to

6  state prisoners in Lancaster.  Id.  The FAC arises out of allegations Plaintiff suffered

7  injuries to his colon as a result of a March 2013 operation by defendant Dr. Patel and that

8  defendants Dr. Patel, Drayton, Lawson, Garcia, and Rush all ignored Plaintiff's

9  subsequent requests for medical treatment.  Id. at 10-13.

10      The defendants have filed three motions pending before the Court.  First,

11  defendants Drayton, Lawson, and Garcia have filed a Motion for Summary Judgment,

12  contending Plaintiff failed to exhaust his administrative remedies prior to filing suit

13  against them, as required by 42 U.S.C. § 1997e(a).  Second, defendants Drayton, Lawson,

14  Garcia, and Rush have filed a joint Motion to Dismiss, contending the FAC both fails to

15  state a claim against them and that the FAC's claims are barred by qualified immunity.

16  Third, defendant Dr. Patel has filed a Motion to Dismiss, contending the FAC fails to

17  state a claim against him and improperly requests punitive damages and declaratory

18  relief.  For the reasons set forth below, the Court recommends: (1) **DENYING**

19  defendants Drayton, Lawson, and Garcia's Motion for Summary Judgment; (2)

20  **GRANTING** in part and **DENYING** in part defendants Drayton, Lawson, Garcia, and

21  Rush's Motion to Dismiss; and (3) **DENYING** defendant Dr. Patel's Motion to Dismiss.

22  ///

23                                          **II.**

24  _____

25      [1]   Throughout the FAC, Plaintiff appears to refer to California State Prison, Los
    Angeles County, as "Lancaster State Prison."  For purposes of clarity, the Court refers to
26  the institution by its proper name.

27      [2]   The Court's paginated references to the FAC reflect the page numbers displayed at
    the top of each page on CM-ECF.
28

                                           2

## PROCEDURAL BACKGROUND

On April 23, 2014, Plaintiff filed a *pro se* Complaint against the five defendants named in the FAC, in both their individual and official capacities.  (ECF Docket No. ("dkt.") 6).  On May 19, 2014, the Court dismissed the Complaint with leave to amend, because the Complaint's official capacity claims were barred by the Eleventh Amendment and the Complaint's allegations failed to state viable individual capacity claims.  (Dkt. 8).

On July 9, 2014, Plaintiff filed the instant FAC against the defendants.  (Dkt. 13). The FAC asserts two claims: (1) an Eighth Amendment claim of deliberate indifference to medical needs, against all five defendants in their individual capacities; and (2) a Fourteenth Amendment due process claim, against defendants Drayton, Lawson, Rush, and Garcia in their individual capacities.  FAC at 9, 14-17.  The FAC requests declaratory and injunctive relief as well as compensatory and punitive damages.  Id. at 16-18.

On November 13, 2014, defendants Drayton, Garcia, Lawson, and Rush filed a Motion to Dismiss the FAC, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. 19).  On January 16, 2015, Plaintiff filed an Opposition to the Motion, attaching a supporting declaration and exhibits.  (Dkt. 45).  On January 30, 2015, the four moving defendants filed a Reply to Plaintiff's Opposition.  (Dkt. 47).

On November 13, 2014, defendants Drayton, Garcia, and Lawson filed a Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies. (Dkt. 21).  Defendants concurrently filed: (1) a notice to Plaintiff regarding the requirements for opposing a motion for summary judgment, pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (*en banc*); (2) a Proposed Statement of Uncontroverted Facts and Conclusions of Law; (3) a Declaration of M. Fordham ("Fordham Decl.") and supporting exhibits; (4) a Declaration of R.L. Briggs ("Briggs Decl.") and supporting exhibits; and (5) a Declaration of R. Robinson ("Robinson Decl.") and supporting exhibits.  (Dkt. 20, 22, 23, 24, 25).  On January 16, 2015, Plaintiff filed an Opposition to the Motion, attaching a supporting declaration, exhibits, and a "Statement

of Controverted Factual Issues."  (Dkt. 44).  On January 30, 2015, the three moving defendants filed a Reply to Plaintiff's Opposition.  (Dkt. 48).

On January 13, 2015, defendant Dr. Patel filed an "Amended" Motion to Dismiss the FAC, pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]  (Dkt. 43).  Defendant Dr. Patel concurrently filed a supporting Declaration of Michael Vincent Ruocco ("Ruocco Decl.").  (Dkt. 42-2).  On January 30, 2015, Plaintiff filed an Opposition to the Motion, attaching a supporting declaration and exhibits.  (Dkt. 50).  On February 5, 2015, defendant Dr. Patel filed a Reply to Plaintiff's Opposition and Evidentiary Objections to the declaration and exhibits enclosed with Plaintiff's Opposition.  (Dkt. 53, 53-1).

On March 23, 2015, the Court issued a Report and Recommendation that: (1) defendants Drayton, Lawson, and Garcia's Motion for Summary Judgment be denied; (2) defendants Drayton, Lawson, Garcia, and Rush's Motion to Dismiss be granted in part and denied in part; and (3) defendant Dr. Patel's Motion to Dismiss be denied.  (Dkt. 55).  On April 23, 2015, defendants Drayton, Garcia, Lawson, and Rush filed Objections to the original Report.  (Dkt. 57).  The Court herein issues a Final Report and Recommendation, addressing defendants Drayton, Garcia, Lawson, and Rush's Objections in footnotes 19, 20, 22, 26, and 27.

**III.**

**FACTUAL ALLEGATIONS IN THE FAC**

At the time of the alleged events, Plaintiff was a prisoner at CSP-LAC in Lancaster, California.  FAC at 3.  On March 8, 2013, Plaintiff was transferred from CSP-LAC to Lancaster Medical Center for a colonoscopy procedure to be performed by defendant Dr. Patel.  Id. ¶ 8.

During the colonoscopy, defendant Dr. Patel used a scope instrument that badly

---

[3]   Defendant Dr. Patel appears to have filed an original Motion to Dismiss on the same day, prior to filing the Amended Motion.  (Dkt. 42).  The Court will treat the Amended Motion as the operative filing.  Hence, all subsequent references to defendant Dr. Patel's Motion will refer to the Amended Motion.

bruised Plaintiff's colon in two different places, causing Mesenteric Hematoma[4] with active bleeding.  Id.  Nonetheless, defendant Dr. Patel ignored the bruising of Plaintiff's colon and declared the colonoscopy had been successfully completed.  Id.  According to the FAC, defendant Dr. Patel knew or should have known Plaintiff was at risk of bleeding internally or rectally as a result of the bruising of his colon.  Id. ¶ 9.

After the procedure, Plaintiff complained to defendant Dr. Patel and his staff that he was in immediate pain.  Id.  Defendant Dr. Patel failed to act on these complaints.  Id.  Instead, defendant Dr. Patel advised Plaintiff his concerns would be addressed once he was transferred back to CSP-LAC.  Id.

After the procedure, defendant Dr. Patel provided Plaintiff and CSP-LAC medical staff with "Patient Instructions After [a] Colonoscopy," which advised that a physician be contacted if Plaintiff suffered from certain symptoms.[5]  Id. ¶ 10.  The symptoms listed on the instructions included "chills and/or fever over 101 degrees within 24 hours, sever[e] abdominal pain, other than gas or cramps, [and] large amounts of rectal bleeding."  Id.  Plaintiff has attached a copy of the instructions to the FAC.  Id. at 30.

Plaintiff appears to have returned to CSP-LAC sometime in the morning on March 8, 2013.  Id. ¶ 11.  On his return, Plaintiff was sweating, feeling faint, and suffering from chills and severe abdominal pain.  Id.  Plaintiff notified defendant Rush, who was tasked with processing Plaintiff back into General Population at CSP-LAC, of these symptoms.  Id.  Defendant Rush ignored defendant Dr. Patel's instructions, refused to acknowledge Plaintiff's complaints, and told Plaintiff he was merely feeling weak because of a lack of

---

[4]   "Mesenteric Hematoma," is the intestinal collection of blood outside of blood vessels, caused by leakages from blood vessels.

[5]   The FAC does not expressly state CSP-LAC medical staff received a copy of the instructions.  The FAC's exact words are that "Dr. Patel issued [instructions] that listed a number of symptoms that prison medical staff were to take notice of in case of complications."  FAC ¶ 10.  Given that the FAC later alleges defendant Rush "ignor[ed]" these instructions, see id. ¶ 12, the Court construes such language as alleging defendant Rush and other medical staff received a copy of the instructions.

1    food and water.  Id. ¶ 12.  Defendant Rush then instructed Plaintiff to return to his cell.

2    Id.

3        Later that morning, at 11:30 a.m., defendant Garcia heard inmate Jones, Plaintiff's

4    cellmate, shout "Man Down."  Id. ¶ 13.  At the time, defendant Garcia was stationed in a

5    "control" room in the building housing Plaintiff.  Id.  In response, defendant Garcia

6    directed defendant Drayton to check on Plaintiff in his cell.  Id.  Once defendant Drayton

7    arrived at Plaintiff's cell, Jones told defendant Drayton Plaintiff was in need of

8    emergency medical help.  Id. ¶ 14.  Defendant Drayton looked through Plaintiff's cell

9    window and saw Plaintiff lying on his back on the cell floor.  Id.  Defendant Drayton

10   stated "He looks alright to me" and stated Plaintiff merely wanted attention.  Id.

11   Defendant Drayton walked away, claiming he would call medical staff.  Id.  Defendant

12   Drayton never returned with medical staff.  Id.

13       At 12:00 p.m., Jones went to CSP-LAC's medical facility to pick up his

14   medication.  Id. ¶ 17.  While there, he advised defendant Rush to go check on Plaintiff

15   because he was "Man Down."  Id.  Neither defendant Rush nor any other medical staff

16   officials responded to Jones' request.  Id.

17       At around 1:00 p.m., Plaintiff requested Jones to again alert defendant Garcia he

18   was sick.  Id. ¶ 15.  Jones kicked on his cell door, creating a disorder and yelling "Man

19   Down."  Id.  Defendant Drayton yelled back that she had called medical staff and they

20   had responded "[Plaintiff will] be alright."  Id.

21       Jones continued to insist defendants Drayton and Garcia get emergency medical

22   help for Plaintiff because Plaintiff was passing in and out of consciousness.  Id. ¶ 16.

23   Defendant Drayton responded, "I'm tired of your shit. I'm going to bring you bags and

24   move you out of my building."  Id.

25       At 2:00 p.m., Jones informed defendant Lawson that Plaintiff was "Man Down,"

26   had passed out twice, and needed medical attention.  Id. ¶ 18.  Defendant Drayton

27   interrupted and told defendant Lawson Plaintiff did not need medical help and that there

28   was nothing wrong with Plaintiff.  Id.  Defendant Lawson then ignored Jones and walked

away.  Id.  At some point during this exchange, defendant Lawson saw Plaintiff lying on
his cell's floor.  Id. ¶ 32(c).

Plaintiff claims defendants Drayton, Lawson, and Garcia violated CSP-LAC
procedures by failing to activate their personal alarms after hearing Jones' repeated
complaints of a medical emergency.  Id. ¶ 19, 32(a).  Plaintiff also claims defendant
Drayton informed other Correctional Officers, including defendant Garcia, that there was
nothing wrong with Plaintiff and advised them to disregard Jones' complaints.[6]  Id. ¶¶ 19,
32(b).

At 5:48 p.m., Jones left his cell and returned with Sergeant Sadarn and a nurse
from CSP-LAC medical staff.  Id. ¶ 20.  Presumably after seeing Plaintiff's condition,
Sadarn or the nurse activated the building's emergency alarm system.  Id.  CSP-LAC
custody and medical staff, including defendant Drayton, responded to the alarm and came
to Plaintiff's cell.  Id. ¶ 21.  Plaintiff was taken from his cell, examined, and then
transported by ambulance to the emergency room in Palmdale Medical Center.  Id.

On March 9, 2013, Dr. Yin-Dar Nien, M.D., conducted a medical evaluation of
Plaintiff.  Id. ¶ 22.  Dr. Nien performed a diagnostic Lepanoscopy, finding minimal
bleeding.  Id.  However, Dr. Nien discovered Plaintiff suffered from Mesenteric
Hematoma.  Id. ¶ 23.

On March 10, 2013, Dr. Nien performed a surgery to treat Plaintiff's bleeding and
discovered the Mesentry on the right side of Plaintiff's colon was affected.  Id. ¶ 24.  Dr.
Nien then decided to perform a right Hemicolectomy, removing the right side of
Plaintiff's colon.  Id.  Plaintiff claims the removal of the right side of his colon was
caused by the injuries he suffered during the colonoscopy performed by defendant Dr.
Patel on March 8, 2013.  Id. ¶ 25.

**IV.**

---

[6]   The FAC does not make clear whether defendant Drayton told any Correctional
Officers other than defendants Lawson and Garcia to disregard Jones' complaints.

1

## DISCUSSION[7]

2  **A.    Defendants Drayton, Lawson, and Garcia's Motion for Summary Judgment**

3  **for Failure to Exhaust Administrative Remedies**

4       **1.    Legal Standard on a Motion for Summary Judgment**

5       Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil

6  Procedure if the moving party demonstrates the absence of a genuine issue of material

7  fact and entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S.

8  317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  A factual dispute is "material" if it

9  might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby,

10  Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

11       An affidavit or declaration may be used to support or oppose a motion for

12  summary judgment, provided it is "made on personal knowledge, set[s] out facts that

13  would be admissible in evidence, and show[s] that the affiant or declarant is competent to

14  testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  When ruling on a summary

15  judgment motion, the district court must view all inferences drawn from the underlying

16  facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v.

17  Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

18  Summary judgment is therefore not appropriate "where contradictory inferences may

19  reasonably be drawn from undisputed evidentiary facts."  Hollingsworth Solderless

20  Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).  Furthermore, the Court

21  must not make credibility determinations with respect to the evidence offered.  See T.W.

22  Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987)

23  (citing Matsushita, 475 U.S. at 587).

24       **2.    Law Governing PLRA Exhaustion**

25            **a.    The PLRA Exhaustion Requirement**

26

27  _____

[7]   Because different defendants have filed each of the three pending motions, the
28  Court addresses each motion individually.

8

As part of the Prison Litigation Reform Act of 1996 ("PLRA"), Congress amended and strengthened the requirement that prisoners pursuing claims under 42 U.S.C. § 1983 and other federal statutes, must first exhaust administrative remedies.  As amended, 42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The U.S. Supreme Court has held the PLRA requires a prisoner to complete any prison administrative process capable of addressing the inmate's complaint, even if the prisoner seeks money damages and such relief is not available under the administrative process.  See Booth v. Churner, 532 U.S. 731, 741, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001).  Moreover, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002); see also Jones v. Bock, 549 U.S. 199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

Furthermore, "§ 1997e(a) requires exhaustion before the filing of a complaint" and is not satisfied by exhaustion during the course of the litigation.  McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); see also Woodford v. Ngo, 548 U.S. 81, 93-94, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).  "[P]roper exhaustion" under the PLRA requires that a prisoner comply with the prison's "deadlines and other critical procedural rules" as a precondition to bringing suit in federal court.  See Ngo, 548 US. at 88, 90.  If a prisoner has not exhausted his available administrative remedies before filing his federal suit, the Court must dismiss the action without prejudice to allow plaintiff to file a new action after he has completed his administrative remedies.  See McKinney, 311 F.3d at 1200-01.

9

### b.    The Parties' Respective Burdens

Section 1997e(a) creates an affirmative defense and, therefore, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones, 549 U.S. at 216.  Defendants have the burden of raising and proving plaintiff's failure to exhaust.  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (setting forth the respective burdens where a defendant contends a plaintiff failed to exhaust administrative remedies).  If defendants meet this burden, the burden shifts to plaintiff to come forward with evidence showing his administrative remedies were "effectively unavailable." Id.; Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (a failure to exhaust may be excused if administrative remedies have been made "effectively unavailable").

The Ninth Circuit has held that "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA." Sapp, 623 F.3d at 823.  The rationale for this exception is straightforward: if prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and, as a result, his administrative remedies become unavailable. Id.  In order to fall within this exception, the inmate must establish: (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court; and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations. Id. at 823-24.

In the Ninth Circuit, a defendant may raise the issue of non-exhaustion in a motion for summary judgment. Albino, 747 F.3d at 1169.  For defendants to prevail on a motion for summary judgment, they must produce evidence proving a plaintiff's failure to exhaust. See id. at 1166.  If the undisputed evidence, when viewed in the light most favorable to plaintiff, establishes plaintiff failed to exhaust his administrative remedies, the defendants are entitled to judgment as a matter of law. Id.; see also Fed. R. Civ. P. 56(a).  If, however, material facts relevant to the issue of exhaustion are disputed, then

1   "summary judgment should be denied" and disputed factual questions relevant to

2   exhaustion should be decided by the Court "in a preliminary proceeding." Albino, 747

3   F.3d at 1170-71.

### 3.   California's Inmate Grievance Process

5        The State of California provides its prisoners and parolees the right to appeal

6   administratively "any policy, decision, action, condition, or omission by the department

7   or its staff that the inmate or parolee can demonstrate as having a material adverse effect

8   upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).  At the

9   time of the events giving rise to the present action, California prisoners were required to

10  proceed through three separate levels of appeal to exhaust the administrative appeal

11  process: (1) first level appeal to the prison's appeals coordinator; (2) second level appeal

12  to the prison institution's head or designee; and (3) third level appeal to the Secretary of

13  CDCR. See id. § 3084.7.  A final decision from the Secretary's level of review—that is,

14  the third level—exhausts the prisoner's administrative remedies.  See id. § 3084.7(d)(3).

15       At all levels of the administrative process, prisoners must "use a CDCR Form 602

16  (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the

17  relief requested." Id. § 3084.2(a).  Prisoners may also attach a "CDCR Form 602-A

18  (08/09), Inmate/Parolee Appeal Form Attachment" if "additional space is needed to

19  describe the issue under appeal or the relief requested." Id.  "The inmate or parolee is

20  limited to the space provided on the Inmate/Parolee Appeal form and one Inmate/Parolee

21  Appeal Form Attachment to describe the specific issue and action requested." Id. §

22  3084.2(a)(2).  California regulations allow for inmate grievances to be screened and

23  rejected by prison officials without a decision if the grievances are improperly submitted.

24  See id. §§ 3084.5, 3084.6.

### 4.   Defendants' Evidence

26       In support of their Motion for Summary Judgment, defendants Drayton, Lawson,

27  and Garcia have filed three declarations.  First, defendants present a declaration of CSP-

28  LAC Appeals Coordinator M. Fordham.  Fordham Decl. ¶ 2.  In the declaration, Fordham

states he is responsible for screening, logging, and processing grievances and administrative appeals filed by CSP-LAC inmates.  Id.  After searching CSP-LAC records, Fordham claims Plaintiff filed six inmate grievances relating to the FAC's allegations at the second level of review.[8]  Id. ¶ 7.  Five of these filings concerned a staff

---

[8]   The six filings are listed below:

(1) a Form 602 inmate grievance, which was marked as a staff complaint, assigned log no. LAC-B-13-01026, screened out by prison officials on March 29, 2013, and returned to Plaintiff with a notice (attached to Fordham's Declaration as "Exhibit A") explaining it contained unapproved personal papers;

(2) a Form 602 inmate grievance bearing log no. LAC-B-13-01026 that was re-submitted, screened out on April 8, 2013, and returned to Plaintiff with a notice (attached to Fordham's Declaration as "Exhibit B") explaining the grievance contained excess verbiage and unrelated documentation;

(3) a Form 602 inmate grievance bearing log no. LAC-B-13-01026 that was re-submitted, screened out on April 22, 2013, and returned to Plaintiff with a notice (attached to Fordham's Declaration as "Exhibit C") explaining Plaintiff had improperly attached new 602 forms to the grievance;

(4) a Form 602 inmate grievance bearing log no. LAC-B-13-01026 that was re-submitted, screened out on May 10, 2013, and returned to Plaintiff with a notice (attached to Fordham's Declaration as "Exhibit D") explaining the grievance did not meet the criteria for a "staff complaint";

(5) a Form 602 inmate grievance bearing log no. LAC-B-13-01026 that was re-submitted, screened out on May 23, 2013, and returned to Plaintiff with a notice (attached to Fordham's Declaration as "Exhibit E") explaining it did not meet the criteria for a staff complaint; and

(6) a Form 602 inmate grievance bearing log no. LAC-B-13-01605, which was marked as a medical appeal, screened out on May 14, 2013, and returned to Plaintiff with a notice instructing Plaintiff to instead use Form 602-HC and to submit the grievance to the healthcare appeals office (attached to Fordham's Declaration as "Exhibit F").

complaint grievance that was repeatedly screened out at the second level between March 2013 and May 2013 (identified by log no. LAC-B-13-01026).  Id.  The sixth of these filings was a medical grievance Plaintiff filed at the second level in May 2013 (identified by log no. LAC-B-13-01605).  Id.  All six of these grievances were screened out and returned to Plaintiff for procedural reasons and without any decision on their merits.  Id.  Fordham claims to have found no records Plaintiff filed any other grievances regarding the FAC's allegations.  Id. ¶ 9.

Second, defendants have filed a declaration of CDCR Acting Chief of the Office of Appeals R. L. Briggs.  Briggs Decl. ¶ 2.  In the declaration, Briggs claims the Office of Appeals reviews all *non-medical* inmate appeals submitted at the third level of the inmate grievance process.  Id. ¶¶ 2, 4.  Briggs states that a search of the Office of Appeals' records revealed only one non-medical inmate appeal submitted by Plaintiff at the third level relating to the allegations in this case: a Form 602 inmate grievance bearing log no. LAC-13-01026 that was screened out on March 6, 2014 and returned to Plaintiff without a final decision because it was submitted prior to review at lower levels of the inmate grievance process.  Id. ¶¶ 11-12.

Third, defendants have filed a declaration of Chief of the Inmate Correspondence and Appeals Branch R. Robinson.  Robinson Decl. ¶ 1.  In the declaration, Robinson claims the Inmate Correspondence and Appeals Branch receives, reviews, and maintains *medical* inmate appeals at the third level of the inmate grievance process.  Id. ¶ 2.  Robinson states that a search of Inmate Correspondence and Appeals Branch records revealed only two medical inmate appeals by Plaintiff at the third level relating to the allegations in this case.[9]  Id. ¶¶ 5-6.  Robinson admits that the denial of one of the

---

Fordham Decl. ¶ 7.

[9]   The two filings are listed below:

(1) a Form 602-HC inmate grievance against defendant Rush, which was labeled as

1  grievances on September 9, 2013 exhausted Plaintiff's administrative remedies in regard

2  to his claims against defendant Rush.  Id. ¶ 7.

3      Defendants Drayton, Lawson, and Garcia contend these declarations establish

4  Plaintiff never administratively exhausted his claims against them.  Defs. Drayton,

5  Lawson, and Garcia's Mot. for Summ. J. at 4-5.  Defendants argue the declarations show

6  Plaintiff never received a final decision from the third level regarding allegations they

7  engaged in the misconduct complained of in the FAC.  Id.  Hence, the moving defendants

8  conclude Plaintiff's claims are unexhausted and that they are entitled to judgment as a

9  matter of law.  Id.

10     **5.    Plaintiff's Evidence**

11     Plaintiff does not dispute that he never received a final decision at the third level

12  relating to the FAC's allegations against defendants Drayton, Lawson, and Garcia.

13  Instead, in his Opposition to the defendants' Motion for Summary Judgment[10] and

14  accompanying "Statement of Controverted Factual Issues," Plaintiff claims the five

15  rejected inmate grievances at the second level (identified with log no. LAC-B-13-01026)

16

17

18

---

19  a staff complaint, assigned log no. LAC-SC-13000596, and denied at the third

20  level on September 9, 2013 (a copy of the denial is attached to Robinson's
    declaration as "Exhibit B"); and

21

22  (2) a Form 602-HC inmate grievance requesting monetary damages for mistakes
    during a medical procedure on March 8, 2013, which was assigned log no. LAC-

23  HC-13046356, and denied at the third level on September 26, 2013 (a copy of the

24  denial is attached to Robinson's declaration as "Exhibit C").

25  Robinson Decl. ¶¶ 5-6.

26

27  [10]   The Court's paginated references to the Opposition and its accompanying
    documents reflect the page numbers displayed at the top of each page of the filing on

28  CM-ECF.

14

were improperly screened out.[11]  Pl.'s Opp. to Mot. for Summ. J. at 4-6, 9-10.  Hence, Plaintiff argues his administrative remedies were "effectively unavailable," presumably relying on the Ninth Circuit's holding in Sapp v. Kimbrell, 623 F.3d 813 (9th Cir. 2010).  Id.  In support, Plaintiff presents three pieces of evidence.

First, Plaintiff attaches copies of papers he submitted in the five grievances.[12]  Id. at 13-18.  The papers consist of a Form 602 ("602 form"), a Form 602-A ("602-A form"), and two pages of lined-paper.  Id.  In Section A of the 602 form (bearing the heading "Explain your issue"), Plaintiff asserts a complaint of "employee misconduct" against defendants Drayton, Lawson, Garcia, and Rush.  Id. at 13.  In Section A of the 602-A form (also bearing the heading "Explain your issue"), Plaintiff recites the same allegations against defendant Rush that appear in the FAC.  Id. at 14.  The two pages of lined paper begin with the term "continuation" and appear to be a continuation of the

---

[11]   Plaintiff does not present evidence in his Opposition addressing any of the other grievances referenced in Fordham, Briggs, and Robinson's declarations.  In fact, other than the five rejected grievances identified with log no. LAC-B-13-01026, Plaintiff's Opposition only discusses one other attempt by Plaintiff to exhaust his administrative remedies.  Plaintiff alleges he submitted a complaint to CSP-LAC Captain S. Moore in April 2013 stating he was denied medical attention by the defendants named in the FAC.  Pl.'s Opp. to Mot. for Summ. J. at 8.  Plaintiff has attached a May 4, 2013 letter from Captain Moore acknowledging Plaintiff filed a complaint on April 28, 2013 about the denial of timely medical treatment by housing unit staff.  Id. at 26.  Captain Moore informed Plaintiff he had a pending inmate grievance regarding the allegations and that Plaintiff would be interviewed when the grievance was reviewed.  Id.  In his "Statement of Controverted Factual Issues," Plaintiff appears to claim Captain Moore's letter promised Plaintiff's grievance would be heard.  Id. at 10.  Defendants do not dispute Plaintiff communicated with Captain Moore or that Captain Moore sent the letter attached in Plaintiff's Opposition.  See Reply to Pl.'s Opp. to Mot. for Summ. J. at 3 n.2.  However, because the Court concludes in Section IV.A.7., that Plaintiff's administrative remedies may have been "effectively unavailable" on other grounds, the Court does not address Plaintiff's claims in regard to the letter.

[12]   In their Reply to Plaintiff's Opposition, defendants Drayton, Lawson, and Garcia do not contest the authenticity of these papers.

allegations in the 602-A form.  Id. at 16.  These two pages of lined paper contain the same allegations against defendants Drayton, Lawson, and Garcia that appear in the FAC.  Id. at 16-19.  In short, while the 602 and 602-A forms name defendants Drayton, Lawson, Garcia, and Rush and contain the FAC's allegations against defendant Rush, the FAC's allegations against defendants Drayton, Lawson, and Garcia *only* appear in the two pages of lined paper accompanying the forms.

Second, Plaintiff attaches copies of the notices he received from prison officials explaining why the grievance was screened out and returned each of the five times it was submitted.[13]  Id. at 21-25.  All of these notices contain a set of blank lines allowing for Plaintiff to write a response to the reason given for the grievances' rejection.  Id.  Presumably, Plaintiff was permitted to submit the notice of screening with his written response to convey the response to the prison officials who screened his grievances.

Lastly, Plaintiff attaches his own declaration, signed under penalty of perjury.[14]  Id. at 7-8.  In the declaration, Plaintiff concedes he filed the five grievances identified with log no. LAC-B-13-01026.  Id.  Plaintiff also concedes the five grievances were screened out and returned without a decision, as described in M. Fordham's declaration.  Id.  In the declaration, Plaintiff specifies what documents he submitted with each grievance and why prison officials screened out all five of these grievances.  Id.  Plaintiff supports his claims with citations to the 602 and 602-A forms, the two pages of lined paper, and the five notices of screening.  Id.

### 6.   **Undisputed Material Facts**

Pursuant to Central District Local Rule 56-3, the Court assumes the material facts as claimed and adequately supported by the moving party are admitted to exist without

---

[13]   In their Reply to Plaintiff's Opposition, defendants Drayton, Lawson, and Garcia do not contest the authenticity of these notices.

[14]   In their Reply to Plaintiff's Opposition, defendants Drayton, Lawson, and Garcia do not dispute any of the declaration's factual allegations.

controversy.[15]  The parties' declarations and exhibits establish the following undisputed material facts.

### a.   No Final Decision at the Third Level of Review

In their Statement of Uncontroverted Facts and Conclusions of Law, the moving defendants claim it is undisputed that Plaintiff has not received a final decision at the third level of review relating to the FAC's allegations against them.  See Defs. Drayton, Garcia, and Lawson's Statement of Uncontroverted Facts and Conclusions of Law ¶ 20. The proposition is supported by the declarations of R. Robinson and R. L. Briggs.  See Briggs Decl. ¶¶ 11-12; Robinson Decl. ¶¶ 5-6.  Plaintiff does not dispute this proposition in his own "Statement of Controverted Factual Issues."  See Pl.'s Opp. to Mot. for Summ. J. at 9-10.  Accordingly, pursuant to Central District Local Rule 56-3, the Court assumes the proposition to be an undisputed material fact.  See Local Rule 56-3.

### b.   Screening of Plaintiff's Five Second Level Grievances

Plaintiff's uncontested declaration and exhibits establish the following sequence of events in regard to the five rejected grievances Plaintiff filed at the second level between March 2013 and May 2013 (identified by log no. LAC-B-13-01026).

### i.   First Grievance and Notice of Screening

On March 24, 2013, Plaintiff filed the first of his five rejected grievances at the second level against defendants Drayton, Lawson, Garcia, and Rush.  Pl.'s Opp. to Mot. for Summ. J. at 7.  As part of the grievance, Plaintiff submitted the documents attached to

---

[15]   Central District Local Rule 56-3 provides:

> In determining any motion for summary judgment, the Court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the "Statement of Genuine Issues" and (b) controverted by declaration or other written evidence filed in opposition to the motion.

his Opposition to the defendants' Motion: namely, (1) the 602 form, (2) the 602-A form, and (3) the two pages of lined paper.  Id.

On March 29, 2013, prison officials screened out the first grievance and returned it to Plaintiff with a notice of screening ("March 29, 2013 Notice of Screening").  Id.; see also id. at 21 (copy of March 29, 2013 Notice of Screening).  The March 29, 2013 Notice of Screening stated the two pages of lined paper attached to the 602 and 602-A forms constituted "unapproved personal papers."  Id. at 21.  The March 29, 2013 Notice of Screening thus instructed Plaintiff to remove the pages of lined paper.  Id.

### ii.    Second Grievance and Notice of Screening

In what became the second of the five rejected grievances, Plaintiff re-submitted the 602 form, the 602-A form, and the two pages of lined paper.  Id. at 7.  Plaintiff also submitted the March 29, 2013 Notice of Screening, writing the following response on the blank lines provided on it: "There are no personal papers, these attachments are a continuation of CDC 602(A) only. Space was needed to complete this complaint and list dates, times, and person[n]el; I[']m submitting this complaint, in total. By removing these attachments you'll be denying me due process."  Id. at 21.  In short, Plaintiff explained on the Notice that he had included the two pages of lined paper in his grievance because there was insufficient room on the 602 and 602-A forms for all of his allegations.  Id.

On April 8, 2013, prison officials screened out the second grievance and returned it to Plaintiff with a notice of screening ("April 8, 2013 Notice of Screening").  Id. at 7; see also id. at 22 (copy of the April 8, 2013 Notice of Screening).  The April 8, 2013 Notice of Screening stated the grievance had been "rejected pursuant to California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(9)."  Id. at 22.  Referring to the two pages of lined paper attached to Plaintiff's 602 and 602-A forms, the Notice stated: "Your appeal issue is obscured by pointless verbiage or voluminous documentation such that the reviewer cannot be reasonably expected to identify the issue under appeal.  Note: the only 'continuation' attachment you may use is (1) CDC 602-A [form]."  Id.  Hence, the Notice instructed Plaintiff to "Remove Personal Lined Paper."  Id.

### iii.   Third Grievance and Notice of Screening

Plaintiff then submitted the third of the five rejected grievances.  In this grievance, Plaintiff appears to have omitted the two pages of lined paper that prison officials had twice instructed him to remove.  Instead, Plaintiff claims to have submitted a "new condensed appeal," since "removing all of the lined paper from the appeal would void my entire claim."  Id. at 7.  The Court interprets such language to mean Plaintiff submitted *new* 602 and 602-A forms containing a condensed version of the allegations in the two pages of lined paper that prison officials had instructed him to remove from his first and second grievances.  Unlike with his other grievances, Plaintiff has not attached a copy of these new 602 and 602-A forms in his Opposition.[16]  According to the date stamps on the original 602 and 602-A forms attached to Plaintiff's Opposition, Plaintiff appears to have also included these original forms in his third grievance.  Id. at 13-14.

In his third grievance, Plaintiff also submitted the April 8, 2013 Notice of Screening, writing the following response on the blank lines provided on it: "Per your request attachments removed. Complaint was rewritten to cond[e]nse the complaint and complete it. I[']m objecting to your office's restriction of additional space."  Id. at 22.

On April 22, 2013, prison officials screened out the third grievance and returned it to Plaintiff with a notice of screening ("April 22, 2013 Notice of Screening").  Id. at 7; see also id. at 23 (copy of the April 22, 2013 Notice of Screening).  The April 22, 2013 Notice of Screening stated "You have attached a new 602 and 602-A to your appeal. Remove these attachments and simply submit original 602 and 602-A (with log numbers)."  Id. at 23.  The April 22, 2013 Notice of Screening contained no citation to

---

[16]   Although Plaintiff does not provide the Court with a copy of the "condensed appeal," his claims that he filed it are corroborated by Plaintiff's written response on the April 8, 2013 Notice of Screening.  In his response, Plaintiff wrote: "Per your request attachments removed. Complaint was rewritten to cond[e]nse and complete it."  Pl.'s Opp. to Mot. for Summ. J. at 22.  Furthermore, the moving defendants have not presented any evidence either disputing that this "condensed appeal" was filed or indicating it did not summarize the allegations in the two pages of lined paper.

1   any regulatory provision justifying rejection of the third grievance.  Id.

2                    **iv.    Fourth Grievance and Notice of Screening**

3          Plaintiff then submitted the fourth of the five grievances.  Complying with the

4   April 22, 2013 Notice of Screening, Plaintiff submitted only the *original* 602 and 602-A

5   forms he included in his first and second grievances.  Id. at 7.  As noted previously, while

6   the original 602 and 602-A forms named defendants Drayton, Lawson, Garcia, and Rush

7   and contained the FAC's allegations against defendant Rush, they did not contain

8   Plaintiff's allegations against defendants Drayton, Lawson, and Garcia.

9          In his fourth grievance, Plaintiff also submitted the April 22, 2013 Notice of

10  Screening, writing the following response on the blank lines provided on it: "You've

11  made me remove more tha[n] half my staff complaint. Those attachments are a [] part of

12  this complaint right. You've copied them for the reviewer I[']m assuming, so I will do as

13  you've instructed."  Id. at 23.  In other words, Plaintiff appears to have believed prison

14  officials had copies of the two pages of lined paper he had submitted in his first and

15  second grievances.  Plaintiff's written response on the April 22, 2013 Notice of Screening

16  indicates Plaintiff believed the allegations on the two pages of lined paper would still be

17  considered a part of his fourth grievance, even though he had only submitted the original

18  602 and 602-A forms.  Id.

19         On May 10, 2013, prison officials screened out the fourth grievance and returned it

20  to Plaintiff with a notice of screening ("May 10, 2013 Notice of Screening").  Id. at 7; see

21  also id. at 24 (copy of the May 10, 2013 Notice of Screening).  The May 10, 2013 Notice

22  of Screening stated "The Appeal was forwarded to the hiring authority and it was

23  determined that this appeal does not meet the requirements for assignment as a staff

24  complaint. Remove staff complaint language and resubmit appeal if your intent is to seek

25  resolution for your other issues. Submit a request LAC can process."  Id. at 24.  Like the

26  April 22, 2013 Notice of Screening, the May 10, 2013 Notice of Screening contained no

27  citation to any regulatory provision justifying rejection of the fourth grievance.  Id.

28                    **v.    Fifth Grievance and Notice of Screening**

1  Lastly, Plaintiff submitted the fifth of the five rejected grievances.  In his

2  declaration, Plaintiff claims to have "resubmitt[ed] the appeal in protest" as part of this

3  fifth grievance.  Id. at 8.  The Court interprets this language to mean Plaintiff re-

4  submitted the original 602 and 602-A forms he had submitted in his fourth grievance.  In

5  his fifth grievance, Plaintiff also submitted the May 10, 2013 Notice of Screening,

6  writing the following response on the blank lines provided on it: "Send me the hiring

7  authority's requirements for filing staff complaints . . . 'My intent is to file a staff

8  complaint[.]' Yours is to not process it." Id. at 24.

9  On May 23, 2013, prison officials screened out the fifth grievance and returned it

10  to Plaintiff with a notice of screening ("May 23, 2013 Notice of Screening").  Id. at 8; see

11  also id. at 25 (copy of the May 23, 2013 Notice of Screening).  The May 23, 2013 Notice

12  of Screening stated: "The Appeal was forwarded to the hiring authority and it was

13  determined that this appeal does not meet the requirements for assignment as a staff

14  complaint. Resubmit appeal if your intent is to seek resolution for your other issues.

15  Submit a request LAC can process. In regards to medical staff, you will have to submit a

16  healthcare app[ea]l (602-HC) to medical." Id. at 25.  Like the April 22, 2013 and May

17  10, 2013 Notices of Screening, the May 23, 2013 Notice of Screening contained no

18  citation to any regulatory provision justifying rejection of the fifth grievance.[17]  Id.

19  **7.   Analysis**

20  Viewing the facts in the light most favorable to Plaintiff, the Court concludes

21  defendants Drayton, Garcia, and Lawson are not entitled to judgment as a matter of law

22  because there is a genuine dispute of material fact.[18]  Albino, 747 F.3d at 1170-71.

23

24  [17]  According to Briggs' declaration, Plaintiff subsequently attempted to file a

25  grievance identified with log no. LAC-B-13-01026, at the third level of the inmate

26  grievance process. Briggs Decl. ¶ 12. The grievance was screened out on March 6, 2014

     because Plaintiff had not gained a final decision at the second level. Id.

27  [18]  Consequently, the Court must decide these disputed factual questions "in a

28  preliminary proceeding," prior to reaching the merits of Plaintiff's claims. Albino, 747

Namely, the parties dispute whether Plaintiff's third grievance placed prison officials on notice of his claims against defendants Drayton, Garcia, and Lawson.  The Court sets forth its analysis below.

> **a.   Defendants Have Met Their Initial Burden of Proof of Showing Generally Available and Unexhausted Administrative Remedies**

The Court's analysis begins with the undisputed fact that Plaintiff never received a final decision from the third level of the inmate grievance process regarding the FAC's allegations against defendants Drayton, Garcia, and Lawson.  See Defs. Drayton, Garcia, and Lawson's Statement of Uncontroverted Facts and Conclusions of Law ¶ 20; Briggs Decl. ¶¶ 11-12; Robinson Decl. ¶¶ 5-6.  Under California regulations, a final decision from the third level exhausts a prisoner's administrative remedies.  See Cal. Code Regs. tit. 15, § 3084.7(d)(3).  Because Plaintiff did not receive a final decision from the third level, defendants Drayton, Garcia, and Lawson have met their initial burden of showing Plaintiff did not exhaust a generally available administrative remedy.  See Albino, 747 F.3d at 1172.

> **b.   Plaintiff Has Met His Burden of Production of Showing His Administrative Remedies Were "Effectively Unavailable"**

Once a defendant meets his initial burden of proof when challenging exhaustion, the burden of production then shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  Here, Plaintiff contends the five grievances he submitted at the second level (identified with log no. LAC-B-13-01026) were improperly screened.  See Pl.'s Opp. to Mot. for Summ. J. at 9 (noting as a disputed fact whether "the appeals coordinator gave plaintiff the runaround

---

F.3d at 1170-71.

by screening his appeal repeatedly after he complied [with] all of the instructions").[19]
Under the Ninth Circuit's holding in Sapp, improper screening of an inmate grievance
renders administrative remedies "effectively unavailable" where the inmate establishes:
(1) that prison officials screened his grievance for reasons inconsistent with or
unsupported by applicable regulations; and (2) that the grievance, if pursued through all
levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to
pursue in federal court.  Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010).

///

///

### i.   Whether Plaintiff's Five Grievances Were Improperly Screened Under California Regulations

The Court first looks to Sapp's first requirement: that is, to whether Plaintiff's five
grievances were improperly screened under applicable prison regulations.

---

[19]   In their Objections to the Court's original Report and Recommendation, defendants
Drayton, Garcia, Lawson, and Rush contend Plaintiff's "Statement of Controverted
Factual Issues" only disputes whether the fourth and fifth grievances at the second level
were properly screened out.  Defs. Objections at 2.

Admittedly, Plaintiff's Opposition does not expressly contend the first, second, and
third grievances were improperly screened.  However, Plaintiff's Opposition does state
that, "from the first through the fourth screened out [grievances]," he repeatedly
"complied [with screening instructions] until it became an impossibility, which made the
appeal process unavailable."  Pl.'s Opp. to Mot. for Summ. J. at 5.  Plaintiff's Statement
of Controverted Factual Issues also disputes: (1) "[w]hether the appeals coordinator gave
plaintiff the runaround by screening his appeal repeatedly after he complied [with] all of
the instructions"; and (2) "[w]hether the appeal process was made unavailable to plaintiff
by the institution's appeals coordinator."  Id. at 9.  Given Plaintiff's *pro se* status, the
Court construes these statements liberally as challenging the screening of all five of his
grievances at the second level.  See Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir.
1987) ("The Supreme Court has instructed the federal courts to liberally construe the
'inartful pleading' of pro se litigants. . . . This rule is particularly important in civil rights
cases.") (internal citations omitted).

**(A)     The First and Second Grievances Were Properly Screened**

The Court finds Plaintiff's first and second grievances at the second level were properly screened out under California regulations.  In the March 29, 2013 and April 8, 2013 Notices of Screening, prison officials informed Plaintiff his first and second grievances had been rejected because he had attached two pages of lined paper to his 602 and 602-A forms.  See Pl.'s Opp. to Mot. for Summ. J. at 21-22.  Under California regulations, Plaintiff was only permitted to include the 602 and 602-A forms in his grievances and could not include any attachments.  See Cal. Code Regs. tit. 15, § 3084.2(a)(2).  Furthermore, California regulations expressly allow prison officials to reject grievances containing "pointless verbiage or voluminous unrelated documentation."  Id. § 3084.6(b)(9).  Hence, applicable regulations supported prison officials' rejection of Plaintiff's first and second grievances, for purposes of Sapp.

**(B)     The Third Grievance Was Improperly Screened**

However, the Court finds California regulations did not support the screening and rejection of Plaintiff's third grievance.  As noted previously, in his third grievance, Plaintiff submitted new 602 and 602-A forms containing a condensed version of his allegations from the original 602 and 602-A forms and the two pages of lined paper.  In addition to these new forms, Plaintiff also submitted his original 602 and 602-A forms.

In the April 22, 2013 Notice of Screening, prison officials informed Plaintiff his third grievance was rejected because he had "attached a new 602 and 602-A to [his] appeal."  See Pl.'s Opp. to Mot. for Summ. J. at 23.  The Notice thus instructed Plaintiff to "[r]emove these attachments and simply submit original 602 and 602-A (with log numbers)."  Id.  However, prison officials did not cite any prison regulations supporting the proposition that Plaintiff was not permitted to submit the new 602 and 602-A forms as part of his third grievance.  Id.

Defendants contend Plaintiff's third grievance was properly rejected because Plaintiff submitted *both* the original 602 and 602-A forms from his first and second

24

grievances, as well as a new set of 602 and 602-A forms.  Defs. Drayton, Lawson, and Garcia's Mot. for Summ. J. at 11-12.  Defendants contend Plaintiff was only permitted to file *one* set of 602 and 602-A forms in a single inmate grievance.  Id. (citing Cal. Code Regs. tit. 15, §§ 3084.2(a)(2), 3084.2(b)(1)).  For this reason, defendants argue, the rejection of Plaintiff's third grievance was supported by prison regulations.  Id.

Defendants' argument is meritless.  Even assuming Plaintiff was not permitted by prison regulations to file both the original and new 602 and 602-A forms at the same time, prison officials' rejection of the third grievance was still improper.  In the April 22, 2013 Notice of Screening, prison officials did not merely inform Plaintiff he could not include both versions of the forms in his grievance: they explicitly told Plaintiff he had to file the *original* copies of the 602 and 602-A forms in order for his grievance to proceed. See Pl.'s Opp. to Mot. for Summ. J. at 23.  The prison officials thus barred Plaintiff from filing the new 602 and 602-A forms.  As a result, Plaintiff was forced to proceed solely on his original 602 and 602-A forms, which did not contain any of Plaintiff's allegations against the three moving defendants.  The prison officials did not cite, the moving defendants do not raise, and the Court cannot find any California regulations barring prisoners from filing new 602 and 602-A forms after original versions of the forms are rejected.[20]  Hence, the Court concludes the prison officials' rejection of Plaintiff's third

_____

[20]  In their Objections to the Court's original Report and Recommendation, defendants Drayton, Garcia, Lawson, and Rush argue prison officials' instructions that Plaintiff only submit his original 602 and 602-A forms, were proper under Cal. Code Regs. tit. 15, section 3084.2(b).  Defs. Objections at 5 n.3.  Section 3084.2(b) requires prisoners to submit "signed original appeal forms and supporting documents" when filing grievances. Cal. Code Regs. tit. 15, § 3084.2(b).  The regulation provides that "[i]f originals are not available, copies may be submitted with an explanation why the originals are not available."  Id.  Defendants appear to contend Section 3084.2(b) barred Plaintiff from submitting new 602 and 602-A forms after his "original" 602 and 602-A forms were screened out.  See Defs. Objections at 5 n.3.

The Court rejects the defendants' interpretation of Section 3084.2(b).  The

grievance was improper under California regulations.

### (C)   The Fourth and Fifth Grievances Were Improperly Screened

The Court also finds California regulations did not support the rejection of Plaintiff's fourth and fifth grievances.  In the May 10, 2013 and May 23, 2013 Notices of Screening, prison officials claimed these grievances were "forwarded to the hiring authority and it was determined [the grievances] did not meet the requirements for assignment as a staff complaint."  Pl.'s Opp. to Mot. for Summ. J. at 24-25.  California

_____

regulation requires prisoners to submit *original copies* of any grievance forms they file, in the absence of some extenuating circumstance.  The regulation appears to be intended to prevent prisoners from filing *duplicate copies* of prison grievances, instead of original copies.  The regulation does not appear intended to apply to a situation where, as here, a prisoner attempts to file a *new set of grievance forms altogether* in an effort to remedy deficiencies with previously-filed grievance forms.  In short, the regulation does not support prison officials' instructions that Plaintiff only tender his previously-submitted 602 and 602-A forms, that prison officials had already deemed deficient.

Moreover, the Court notes it was particularly unreasonable for prison officials to have limited Plaintiff to his original 602 and 602-A forms in this case because Plaintiff had informed prison officials in his written response to the March 29, 2013 and April 8, 2013 Notices of Screening that his original 602 and 602-A forms did not have enough space for all of his allegations.  See Pl.'s Opp. to Mot. for Summ. J. at 21-22.  For this reason, as Plaintiff stated, his allegations in his first and second grievances had spilled over onto two sheets of lined paper.  Id.  Prison officials had rejected these grievances, correctly instructing Plaintiff he was not permitted to include these additional pages.  Thus, in an effort to both comply with these instructions and still present all of his allegations, Plaintiff filed new 602 and 602-A forms.  It was illogical, if not intentionally obstructionist, for prison officials to prohibit Plaintiff from filing these new forms, when they were on notice the original forms did not contain all of Plaintiff's allegations.  In fact, under California prison regulations, prison officials should have accepted the new 602 and 602-A forms, given Plaintiff's efforts to comply with prior instructions.  See Cal. Code Regs. tit. 15, §§ 3084.6(a)(2) ("An appeal that is rejected . . . may later be accepted if the reason noted for the rejection is corrected and the appeal is returned by the inmate or parolee to the appeals coordinator within 30 calendar days of rejection.").

prison regulations define "staff misconduct" as "staff behavior that violates or is contrary to law, regulation, policy, procedure, or an ethical or professional standard." Cal. Code Regs. tit. 15, § 3084(g). The regulations also provide that "only after the appeal has been reviewed and categorized as a staff complaint by the hiring authority . . . shall it be processed as a staff complaint." Id. § 3084.9(i)(1). "If the hiring authority makes a determination that the complaint shall not be accepted as a staff complaint, *it shall be processed as a routine appeal . . . .*" Id. (emphasis added).

Here, Plaintiff's fourth and fifth grievances were comprised solely of Plaintiff's original 602 and 602-A forms. Pl.'s Opp. to Mot. for Summ. J. at 8. As discussed previously, these forms did not contain any of the FAC's allegations against defendants Drayton, Garcia, and Lawson. The forms merely named the defendants and asserted they had engaged in some unspecified misconduct. Prison officials were thus correct in concluding the fourth and fifth grievances did not assert allegations of "staff misconduct" against defendants Drayton, Garcia, or Lawson, for purposes of California regulations. See Cal. Code Regs. tit. 15, § 3084(g). However, prison officials violated California regulations in failing to then simply process the fourth and fifth grievances as "routine appeals," rather than as staff complaints. See id. § 3084.9(i)(1). In the instant Motion, defendants offer no explanation as to why prison officials did not simply process the grievances as "routine appeals" as California regulations required. Hence, the Court concludes the fourth and fifth grievances were improperly screened and rejected by defendants.

///

///

**ii.      Whether Plaintiff's Third, Fourth, and Fifth Grievances Would Have Exhausted His Administrative Remedies if Pursued Through all Levels of Administrative Appeals**

Having concluded Plaintiff's third, fourth, and fifth grievances were improperly

1   screened under California law, the Court next examines whether these grievances would

2   have exhausted Plaintiff's claims against the moving defendants if pursued through all

3   levels of administrative appeals.  Sapp, 623 F.3d at 823.

4          "A grievance suffices to exhaust a claim if it puts the prison on adequate notice of

5   the problem for which the prisoner seeks redress."  Id. at 824.  To satisfy this

6   requirement, a prison grievance ordinarily need only allege facts with the "level of detail

7   necessary . . . to comply with the grievance procedures."  Jones v. Bock, 549 U.S. 199,

8   218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).  Here, however, California prison

9   regulations provide no guidelines as to the level of specificity required for inmate

10  grievances.  Sapp, 623 F.3d at 824.  California regulations merely instruct a prisoner to

11  submit a Form 602 "describ[ing] the problem and action requested."  Cal. Code Regs. tit.

12  15, § 3084.2(a).  In such situations, the Ninth Circuit has set down an independent

13  standard for courts to apply.  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).

14  Under Griffin, when weighing whether a grievance placed prison officials on notice of a

15  problem, courts must assess whether it "alerts the prison to the nature of the wrong for

16  which redress is sought."  Id. (internal citation and quotation marks omitted).

17              **(A)   Plaintiff's Fourth and Fifth Grievances Would Not**

18                    **Have Sufficed to Exhaust His Administrative**

19                    **Remedies If Properly Pursued**

20          Applying the standard set forth in Griffin, the Court finds Plaintiff's fourth and

21  fifth grievances would not have sufficed to exhaust Plaintiff's claims against defendants

22  Drayton, Garcia, and Lawson, even if they had been pursued through the entire

23  administrative appeal process.  Both grievances were comprised solely of Plaintiff's

24  original 602 and 602-A forms.  Pl.'s Opp. to Mot. for Summ. J. at 8.  As discussed

25  previously, these forms did not contain any of the FAC's allegations against defendants

26  Drayton, Garcia, and Lawson.  The forms merely named the defendants and asserted they

27  had engaged in some unspecified misconduct.  Under Griffin, these grievances would not

28

                                        28

1   have sufficed to exhaust Plaintiff's claims against defendants Drayton, Garcia, and

2   Lawson.[21]   See 557 F.3d at 1120.

3             **(B)**    **There is a Genuine Dispute of Material Fact as to**

4                         **Whether Plaintiff's Third Grievance Would Have**

5                         **Sufficed to Exhaust His Administrative Remedies If**

6                         **Properly Pursued**

7         However, the Court concludes Plaintiff has raised a genuine issue of material fact

8   as to whether his third grievance would have exhausted his claims against the moving

9   defendants if it had proceeded through the administrative appeal process.  Plaintiff has

10  not attached a copy of the new 602 and 602-A forms he included in the grievance.

11  Nonetheless, Plaintiff states in his declaration that these new forms contained a

12  "condensed" version of the allegations in the original 602 and 602-A forms and the two

13  pages of lined paper he submitted in his first and second grievances.  Pl.'s Opp. to Mot.

14  for Summ. J. at 7.  As noted previously, the two pages of lined paper contained all of the

15  FAC's allegations against defendants Drayton, Lawson, and Garcia.  Hence, Plaintiff's

16  declaration suggests the new 602 and 602-A forms may have contained all of the FAC's

17  allegations against defendants Drayton, Lawson, and Garcia.  Defendants do not contest

18  whether Plaintiff filed new 602 and 602-A forms containing these "condensed"

19  allegations, but rather assert that none of Plaintiff's grievances would have sufficed to

20  exhaust the FAC's allegations against defendants Drayton, Lawson, and Garcia.[22]  Defs.

21  

---

22      [21]   The Court notes the absence of allegations against defendants Drayton, Garcia, and

23  Lawson in the fourth and fifth grievances was a result of prison officials' improper

24  instruction that Plaintiff submit only his original 602 and 602-A forms.

25      [22]   In their Objections to the Court's original Report and Recommendation, defendants

26  Drayton, Garcia, Lawson, and Rush argue the third "condensed" grievance would not

27  have sufficed to exhaust Plaintiff's administrative remedies.  Defs. Objections at 8.

Defendants argue the grievance improperly raised claims against both a correctional

28  nurse (*i.e.* defendant Rush) and claims against correctional staff (*i.e.* defendants Drayton,

1   Drayton, Lawson, and Garcia's Reply in Support of Mot. for Summ. J. at 6-7.

2        Without a copy of the new 602 and 602-A forms or further detail as to their

3   contents, the question of whether they would have sufficed to exhaust Plaintiff's

4   administrative remedies is a factual question not "readily ascertainable" from the papers.

5   See Jones v. California Dep't of Corr., 584 F. App'x 496 (9th Cir. 2014) (finding

6   summary judgment inappropriate where prisoner submitted declaration stating he filed an

7   inmate grievance alleging retaliation).  If Plaintiff's statements in his declaration are true,

8   the third grievance would likely have sufficed to exhaust his administrative remedies.  If

9   this is the case, both of Sapp's requirements would therefore be met in regard to the third

10  grievance.  Sapp, 623 F.3d at 823.  Plaintiff has thus met his burden of production of

11  showing his administrative remedies were "effectively unavailable."  Albino, 747 F.3d at

12  1172.

13

_____

14  Lawson, and Garcia).  Id.  Because "medical and custody issues are grieved on separate

15  602 forms," defendants argue Plaintiff should have filed two *separate* grievances—one

16  grievance against defendant Rush and another grievance against defendants Drayton,
    Lawson, and Garcia.  Id.  Hence, defendants contend Plaintiff's third "condensed"

17  grievance was improperly filed and would not have sufficed to exhaust his administrative

18  remedies.  Id.

19      Defendants' argument is meritless.  Even assuming medical and custody issues

20  must be grieved separately, defendants do not cite any regulations holding that a

21  grievance filed against correctional staff cannot proceed simply because it also names a

22  correctional nurse.  Indeed, when screening out Plaintiff's fifth grievance at the second
    level, prison officials instructed Plaintiff to file a separate medical grievance against

23  defendant Rush on a separate 602-HC form.  Pl.'s Opp. to Mot. for Summ. J. at 25.

24  Nothing in the prison officials' notice of screening suggested Plaintiff could not proceed

25  on his claims against defendants Drayton, Lawson, and Garcia because the grievance also
    named defendant Rush.  See id.  Prison officials merely notified Plaintiff that his claims

26  against defendant Rush would not be processed unless he filed a separate 602-HC form

27  against defendant Rush.  See id.  In short, defendants have not shown Plaintiff's third
    grievance would not have sufficed to exhaust his administrative remedies against

28  defendants Drayton, Lawson, and Garcia, simply because it also named defendant Rush.

1    Consequently, the undisputed material facts, when viewed in the light most

2    favorable to Plaintiff, do not establish Plaintiff failed to exhaust his administrative

3    remedies.  Defendants Drayton, Lawson, and Garcia are therefore not entitled to

4    judgment as a matter of law.  <u>Albino</u>, 747 F.3d at 1166; <u>see also</u> Fed. R. Civ. P. 56(a).

5    Accordingly, the defendants' Motion for Summary Judgment must be **DENIED**.

6    **B.**   **Defendants Drayton, Lawson, Garcia, and Rush's Motion to Dismiss**

7        In their joint Motion to Dismiss, defendants Drayton, Lawson, Garcia, and Rush

8    assert two arguments in opposition to Plaintiff's Eighth Amendment deliberate

9    indifference claim: (1) Plaintiff has failed to state a claim; and (2) the defendants are

10   entitled to qualified immunity.  The Court addresses each argument in turn.

11           **1.**   **Legal Standard on a Motion to Dismiss**

12       A complaint may be dismissed for failure to state a claim under Federal Rule of

13   Civil Procedure 12(b)(6) "where there is no cognizable legal theory or an absence of

14   sufficient facts alleged to support a cognizable legal theory." <u>Zamani v. Carnes</u>, 491 F.3d

15   990, 996 (9th Cir. 2007) (citation and internal quotation marks omitted).  In considering

16   whether a complaint states a claim, a court must accept as true all of the material factual

17   allegations in it.  <u>Hamilton v. Brown</u>, 630 F.3d 889, 892-93 (9th Cir. 2011).  However,

18   the Court need not accept as true "allegations that are merely conclusory, unwarranted

19   deductions of fact, or unreasonable inferences." <u>In re Gilead Scis. Sec. Litig.</u>, 536 F.3d

20   1049, 1055 (9th Cir. 2008) (citation and internal quotation marks omitted).

21       Although a complaint need not include detailed factual allegations, it "must contain

22   sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

23   face." <u>Cook v. Brewer</u>, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and internal

24   quotation marks omitted).  A claim is facially plausible when it "allows the court to draw

25   the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

26   (citation and internal quotation marks omitted).  The complaint "must contain sufficient

27   allegations of underlying facts to give fair notice and to enable the opposing party to

28

1  defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

2      In deciding a Rule 12(b)(6) motion, the Court generally looks only to the face of

3  the complaint and documents attached thereto. Van Buskirk v. Cable News Network,

4  Inc., 284 F.3d 977, 980 (9th Cir. 2002). It may, however, consider documents that are

5  proper subjects of judicial notice. See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d

6  981, 991 (9th Cir. 2009) (court may consider "matters of which [it] may take judicial

7  notice" in deciding motion to dismiss); Intri–Plex Technologies, Inc. v. Crest Group, Inc.,

8  499 F.3d 1048, 1052 (9th Cir. 2007) ("[A] court may take judicial notice of matters of

9  public record without converting a motion to dismiss into a motion for summary

10  judgment, as long as the facts noticed are not subject to reasonable dispute.") (internal

11  quotation marks omitted).

12      "A document filed *pro se* is to be liberally construed, and a *pro se* complaint,

13  however inartfully pleaded, must be held to less stringent standards than formal pleadings

14  drafted by lawyers." Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008) (citations

15  and internal quotation marks omitted). The Court has "an obligation where the petitioner

16  is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford

17  the petitioner the benefit of any doubt." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir.

18  2012) (citation and internal quotation marks omitted). If, however, a court finds that a

19  *pro se* complaint has failed to state a claim, dismissal may be with or without leave to

20  amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). *Pro se* plaintiffs

21  should be permitted leave to amend unless it is absolutely clear that the complaint's

22  deficiencies cannot be cured. Cafasso v. General Dynamics C4 Sys., Inc., 637 F.3d 1047,

23  1058 (9th Cir. 2011).

24      **2.    Plaintiff States an Eighth Amendment Deliberate Indifference Claim**

25          **Against Defendants Drayton, Lawson, and Rush**

26      Plaintiff alleges defendants Drayton, Lawson, Garcia, and Rush acted with

27  deliberate indifference to his serious medical needs when they failed to procure medical

28

32

treatment for him after hearing complaints regarding his medical condition on March 8, 2013.  FAC at 14-17.

### a.    Applicable Law

A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate.  Farmer v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  To show deliberate indifference, a prisoner plaintiff must show the defendant officials (1) deprived him of an objectively serious medical need, and (2) acted with a subjectively culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

Serious medical needs under the objective prong of this test include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (internal citation and quotation marks omitted).

The required subjective showing of deliberate indifference is satisfied when it is established that "the official knew of and disregarded a substantial risk of serious harm to [the prisoner's] health or safety."  Johnson v. Meltzer, 134 F.3d 1393, 1398 (9th Cir. 1998) (citing Farmer, 511 U.S. at 837).  In other words, the prison official (1) must have subjective knowledge of the risk of serious harm, and (2) must nevertheless fail to reasonably respond to the risk.  Farmer, 511 U.S. at 837-38.  Under this standard, "[i]f a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk."  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal quotation marks and citation omitted).

Prison officials manifest deliberate indifference when they "intentionally deny[] or delay[] [prisoners'] access to medical  care."  Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  "[D]eliberate indifference to medical needs may be

1  shown by circumstantial evidence when the facts are sufficient to demonstrate that a

2  defendant actually knew of a risk of harm." Lolli v. Cnty. of Orange, 351 F.3d 410, 421

3  (9th Cir. 2003).  In particular, the Ninth Circuit has held "a prison official acts with

4  deliberate indifference when he ignores the instructions of the prisoner's treating

5  physician." Wakefield v. Thompson, 177 F.3d 1160, 1165 (9th Cir. 1999).

6      A prison official's failure to follow state law procedures and regulations is not *by*

7  *itself* sufficient for a deliberate indifference claim.  Peralta v. Dillard, 744 F.3d 1076,

8  1087 (9th Cir. 2014).  However, the failure to follow such procedures can be a factor in

9  determining whether the subjective and objective components of the deliberate

10  indifference standard have been met.  See id. ("P[laintiff] must prove both (1) that the

11  failure to follow procedure put inmates at risk and (2) that D[efendant] *actually knew* that

12  his actions put inmates at risk.").

13          **b.    Analysis**

14      In regard to the first prong of the deliberate indifference analysis, the Court finds

15  Plaintiff's allegations easily demonstrate the existence of an objectively serious medical

16  need.  Plaintiff alleges his colon was bruised during his colonoscopy on March 8, 2013.

17  FAC ¶ 8.  Plaintiff claims the injury necessitated a major surgery on March 10, 2013 and

18  resulted in the removal of the right side of Plaintiff's colon.  Id. ¶¶ 24-25.  Furthermore,

19  Plaintiff claims he suffered severe abdominal pain and bleeding between March 8 and

20  March 10 as a result of the injury.  Id. at 10-13.  According to the FAC, defendants

21  Drayton, Lawson, Garcia, and Rush did not provide medical treatment for Plaintiff,

22  despite being placed on notice of Plaintiff's medical condition.  Id.  These allegations

23  thus establish the four defendants deprived Plaintiff of an objectively serious medical

24  need, as per the first prong of the deliberate indifference test.  See Lopez, 203 F.3d at

25  1131 (noting serious medical needs are shown by the existence of injuries "that a

26  reasonable doctor or patient would find important and worthy of comment or treatment"

27  as well as injuries involving "chronic and substantial pain").

28

Moving to the second prong, the Court finds Plaintiff has also alleged sufficient facts showing deliberate indifference in regard to defendants Drayton, Lawson, and Rush, but not in regard to defendant Garcia.  For purposes of clarity, the Court articulates its reasoning on the second prong separately for each of the four defendants.

### i.   Defendant Drayton

Plaintiff has sufficiently alleged facts showing defendant Drayton acted with deliberate indifference in repeatedly failing to provide him with medical care on March 8, 2013.  Plaintiff has alleged his cellmate Jones communicated with defendant Drayton about Plaintiff's need for medical care at three different times on March 8: (1) at 11:30 a.m.; (2) at 1:00 p.m.; and (3) at 2:00 p.m., as Jones was speaking with defendant Lawson.  FAC at 11-12.

The FAC's allegations make clear defendant Drayton knew of Plaintiff's dire medical condition as early as 11:30 a.m.  At 11:30 a.m., defendant Drayton was informed by Plaintiff's cellmate, Jones, that Plaintiff was in need of medical care.  Id. ¶ 14.  Furthermore, defendant Drayton saw Plaintiff lying on the floor of his cell.  Id.  While defendant Drayton appears to have initially responded to Jones' complaints,[23] defendant Drayton brushed off Jones' *subsequent* warnings about Plaintiff's medical condition sometime after 1:00 p.m., yelling back "I'm tired of your shit."  Id. ¶ 16.

In addition, defendant Drayton interfered with Jones' attempts to communicate Plaintiff's serious medical needs to other Correctional Officers, including defendants Garcia and Lawson.  Id. ¶¶ 19, 32(b).  For example, defendant Drayton, on her own initiative, dismissed Jones' warnings as Jones was speaking to defendant Lawson at 2:00

_____

[23]   According to the FAC, it appears defendant Drayton summoned medical staff when first notified of Plaintiff's medical condition at 11:30 a.m.  See FAC ¶ 14.  Furthermore, as defendants note in the instant Motion, Plaintiff appears to have acknowledged in inmate grievances attached to the FAC that defendant Drayton did contact medical staff at this time.  Defs. Drayton, Lawson, Garcia, and Rush's Mot. to Dismiss at 15-16.

p.m., thus dissuading defendant Lawson from attending to Plaintiff's medical needs.  Id. ¶ 18.  Furthermore, defendant Drayton never activated her personal alarm, as per CSP-LAC regulations, upon hearing complaints that Plaintiff needed medical care.  Id. ¶ 32(a).  Defendant Drayton's behavior and failure to again call medical staff during these later incidents manifests deliberate indifference to Plaintiff's medical condition.  See Harrison v. Sample, 359 F. App'x 893, 894 (9th Cir. 2009) (finding genuine issue of material fact as to whether prison official acted with deliberate indifference, where inmates informed defendant that plaintiff was experiencing a medical emergency, and where defendant responded by "waiving off" their pleas for assistance and slamming shut the window to the control booth).  Hence, Plaintiff has stated facts establishing the second prong of the deliberate indifference standard in regard to defendant Drayton.

## ii.    Defendant Lawson

Plaintiff has sufficiently alleged facts showing the subjective prong of the deliberate indifference test in regard to defendant Lawson.  Plaintiff's claim against defendant Lawson arises out of a single incident on March 8, 2013 at 2:00 p.m.  FAC ¶ 18.  At this time, defendant Lawson allegedly failed to procure medical treatment for Plaintiff after being notified of Plaintiff's medical condition by Plaintiff's cellmate, Jones.  Id.  As Jones was telling defendant Lawson Plaintiff was suffering a medical emergency and had passed out twice, defendant Drayton intervened and claimed Plaintiff was "alright."[24]  Id.  At some point during this exchange, defendant Lawson saw Plaintiff

---

[24]    In the instant Motion, defendants suggest the FAC is unclear as to whether Jones informed defendant Lawson of Plaintiff's medical condition.  Defs. Drayton, Lawson, Garcia, and Rush's Mot. to Dismiss at 12 n.5.  In support, defendants cite the fact that the FAC only alleges Jones "'was *attempting*'" to explain Plaintiff's medical condition before defendant Drayton intervened.  Id. (quoting FAC ¶ 18) (emphasis added).  However, the FAC also alleges Jones "advised . . . Lawson that Plaintiff was 'Man Down' and had passed out twice[.]"  FAC ¶ 18.  The Court liberally construes such allegations as stating defendant Lawson was informed of Plaintiff's medical condition by Jones.

lying on the floor of his cell.  Id. ¶ 32(c).  Defendant Lawson then walked away without summoning medical staff and failed to activate his personal alarm, as CSP-LAC regulations required.  Id. ¶¶ 18, 32(a).

Defendant Lawson's failure to summon medical staff, activate his personal alarm, or respond in any way whatsoever, despite having seen Plaintiff lying on the floor of his cell and having heard Jones' complaints that Plaintiff had passed out twice, sufficiently show defendant Lawson acted with deliberate indifference.  See Estelle, 429 U.S. at 104.

### iii.    Defendant Rush

Plaintiff has alleged sufficient facts establishing the subjective prong of the deliberate indifference test in regard to defendant Rush.  Plaintiff's deliberate indifference claim against defendant Rush arises out of two separate instances where defendant Rush failed to treat Plaintiff on March 8, 2013: (1) upon Plaintiff's return from Lancaster Medical Center; and (2) after Jones told defendant Rush Plaintiff was "man down" at 12:00 p.m.[25]  Because the defendants' Motion only challenges Plaintiff's claim in regard to the first of these incidents, see Defs. Drayton, Lawson, Garcia, and Rush's Mot. to Dismiss at 8-9, the Court does not decide the issue of whether the second incident states a deliberate indifference claim.

Plaintiff has alleged facts showing defendant Rush acted with deliberate indifference in regard to the first incident.  Plaintiff has alleged CSP-LAC medical staff members—including defendant Rush—were given written instructions by defendant Dr. Patel after Plaintiff's colonoscopy on March 8, 2013.  FAC ¶ 10.  The instructions placed

---

[25]   In their joint Motion to Dismiss, defendants contend Plaintiff's deliberate indifference claim against defendant Rush is only based on defendant Rush's failure to treat Plaintiff upon his return from Lancaster Medical Center and is not based on the incident at 12:00 p.m.  Defs. Drayton, Lawson, Garcia, and Rush's Mot. to Dismiss at 5 n.2.  However, the FAC explicitly incorporates the allegations regarding the incident at 12:00 p.m., when asserting an Eighth Amendment claim against the defendants.  FAC ¶ 31.

defendant Rush on notice that symptoms such as chills and severe abdominal pain were signs of complications that necessitated immediate medical attention.[26]  Id.; see also id. at 30 (copy of defendant Dr. Patel's instructions recommending calling a physician "immediately" upon development of the aforementioned symptoms).  Yet, defendant Rush, when faced with Plaintiff's complaints that he suffered from these exact symptoms, did not arrange for Plaintiff to gain medical treatment.  Id. ¶ 12.  In fact, the FAC does not even indicate whether defendant Rush, the member of CSP-LAC's medical staff responsible for processing Plaintiff upon his return from surgery, ever examined Plaintiff.[27]  Rather, defendant Rush dismissed Plaintiff's complaints by stating he would

_____

[26]  In their Objections to the Court's original Report and Recommendation, defendants Drayton, Garcia, Lawson, and Rush note Dr. Patel's instructions implied that severe abdominal pain resulting from gas cramps would *not* warrant immediate medical attention.  Defs. Objections at 12-13; see also FAC at 30 (recommending calling a physician immediately upon noticing "[s]evere abdominal pain, *other than gas cramps*") (emphasis added).  From this, defendants suggest it was reasonable for defendant Rush not to treat Plaintiff after hearing his complaints of abdominal pain because defendant Rush may have concluded the pain was the result of gas cramps.  Defs. Objections at 12-13.  Defendants also note this conclusion was all the more reasonable given that Plaintiff had not eaten prior to seeing defendant Rush.  Id.

Defendants' argument is meritless.  Plaintiff also complained of feeling chills—a symptom that, according to Dr. Patel's instructions, *did* warrant immediate medical attention.  See FAC at 30.  Hence, at the very least, Plaintiff states facts sufficient to find defendant Rush deliberately ignored Dr. Patel's instructions that Plaintiff be given immediate medical attention if he complained of chills.

[27]  In the instant Motion, defendants contend defendant Rush was not indifferent to Plaintiff's claims of pain.  Defs. Drayton, Lawson, Garcia, and Rush's Mot. to Dismiss at 8-9.  Rather, defendants argue, defendant Rush listened to Plaintiff's complaints and mistakenly determined that the cause of Plaintiff's pain was a lack of food and water.  Id.  Hence, defendants contend Plaintiff's claim is akin to a medical malpractice claim challenging defendant Rush's "misdiagnosis" of his symptoms.  Id.

In their Objections to the Court's original Report and Recommendation, defendants

1    "be alright" and attributed Plaintiff's symptoms to a lack of food and water.  Id.  Plaintiff

2    has thus alleged sufficient facts showing defendant Rush acted with deliberate

3    indifference to Plaintiff's medical needs.  See Wakefield, 177 F.3d at 1165

4    ("[A]llegations that a prison official has ignored the instructions of a prisoner's treating

5    physician are sufficient to state a claim for deliberate indifference.").

6                              **iv.    Defendant Garcia**

7         Lastly, Plaintiff has not alleged sufficient facts showing defendant Garcia acted

8    _____

9    Drayton, Garcia, Lawson, and Rush also cite Plaintiff's allegations in a March 24, 2013

10   inmate grievance attached to the FAC.  Defs. Objections at 12.  In the grievance, Plaintiff
     alleged that when he spoke with defendant Rush about his symptoms on March 8, 2013,

11   defendant Rush responded Plaintiff's symptoms "may be due to [a] lack of food and

12   water" and instructed Plaintiff to "return to [his] housing unit for rest."  FAC at 48.
     According to the grievance, defendant Rush also recommended that "if [Plaintiff]

13   continue[d] to feel bad to contact B-Medical."  Id.  Defendants argue such language also

14   shows defendant Rush did not ignore Plaintiff's complaints regarding his symptoms and
     merely diagnosed Plaintiff's pain as arising from a lack of food and water.  Defs.

15   Objections at 12.

16
     Defendants mischaracterize the facts alleged in the FAC and the March 24, 2013

17   grievance.  The FAC does not indicate defendant Rush's "diagnosis" of Plaintiff's

18   symptoms was based on any sort of examination of Plaintiff.  Rather, the FAC appears to
     allege defendant Rush did *nothing* in response to Plaintiff's complaints.  This is

19   supported by the FAC's allegation that defendant Rush "refused to acknowledge

20   Plaintiff's complaint[]s."  FAC ¶ 30(a).  It is thus disingenuous to characterize Plaintiff's
     claim as a challenge to defendant Rush's "diagnosis" when the FAC alleges defendant

21   Rush failed to respond in any manner to Plaintiff's complaints and symptoms.

22
     Moreover, Plaintiff's allegations in the March 24, 2013 grievance that defendant

23   Rush instructed Plaintiff to contact medical staff if his condition worsened are irrelevant.

24   The fact remains that, according to the FAC, defendant Rush was on notice of Dr. Patel's
     instructions regarding Plaintiff's medical condition.  FAC ¶ 10.  The FAC sufficiently

25   alleges defendant Rush acted with deliberate indifference to Plaintiff's medical needs by

26   failing to provide Plaintiff with immediate medical attention upon learning he suffered
     from symptoms highlighted in these instructions.

27

28

with deliberate indifference to his medical needs.  The FAC alleges defendant Garcia heard Jones' complaints regarding Plaintiff's medical condition at 11:30 a.m. on March 8, 2013, while defendant Garcia was stationed in a "control" room in the building housing Plaintiff.  FAC ¶ 13.  Defendant Garcia did not activate his personal alarm in response. Id. ¶ 32(a).  However, defendant Garcia did direct defendant Drayton to check on Plaintiff in his cell.  Id. ¶ 13.

By themselves, these allegations do not show defendant Garcia acted with deliberate indifference to Plaintiff's medical needs.  While these allegations indicate defendant Garcia knew of Plaintiff's medical condition, they also show defendant Garcia responded reasonably to Jones' complaints by directing defendant Drayton to assist Plaintiff at 11:30 a.m.  Although Plaintiff does not appear to have subsequently gained medical treatment until 5:48 p.m. that day, defendant Garcia cannot be held liable for the delay in treatment because he responded to Jones' complaints.[28]  See Farmer, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").  Without additional allegations suggesting defendant Garcia's response to Jones' complaints was somehow unreasonable, the FAC fails to show defendant Garcia acted with deliberate indifference.

Consequently, the Court concludes the FAC states viable Eighth Amendment deliberate indifference claims against defendants Drayton, Lawson, and Rush, but not

---

[28]  The FAC also alleges Jones later again "alerted" defendant Garcia of Plaintiff's medical condition.  FAC ¶¶ 15, 16.  However, even assuming defendant Garcia heard these complaints, the FAC does not specify defendant Garcia's response to them.  In addition, the FAC alleges that, after defendant Garcia initially sent defendant Drayton to check on Plaintiff at 11:30 a.m., defendant Drayton informed defendant Garcia there was nothing wrong with Plaintiff.  Id. ¶ 19.  Furthermore, unlike defendant Lawson, who was given similar information by defendant Drayton, defendant Garcia does not appear to have ever personally visited Plaintiff's cell or personally observed Plaintiff's condition.

against defendant Garcia.  The Court therefore **GRANTS** the instant Motion to Dismiss as it pertains to Plaintiff's deliberate indifference claim against defendant Garcia.

### 3.    Defendants Are Not Entitled to Qualified Immunity

#### a.    Applicable Law

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  On a motion to dismiss, the Court must accept the allegations of the complaint as true when determining whether a defendant is entitled to immunity.  Butler v. San Diego Dist. Attorney's Office, 370 F.3d 956, 963 (9th Cir. 2004); see also Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal [pursuant to Rule 12(b)(6)] before the commencement of discovery.").

The qualified immunity analysis is two-pronged.  See Pearson, 555 U.S. at 232, 236.  Under what is often called the first prong, the issue is whether the facts, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right.  Id. at 232.  Because the Court concludes the FAC's allegations state viable Eighth Amendment deliberate indifference claims against defendants Drayton, Lawson, and Rush in Section IV.B.2. (establishing the first prong of the qualified immunity analysis), the Court herein looks to the second prong.

The second prong of the qualified immunity analysis asks whether the constitutional right in question was "clearly established" at the time the conduct at issue occurred.  Id. at 232, 236.  Regardless of whether or not the facts make out a constitutional violation, qualified immunity is available if the right allegedly violated was

not clearly established.  Id. at 232.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, ___ U.S. ___, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011) (brackets omitted) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).  The "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition," Saucier, 533 U.S. at 201, and "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Pearson, 555 U.S. at 244 (quoting Wilson v. Layne, 526 U.S. 603, 614, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999)).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Messerschmidt v. Millender, ___ U.S. ___, 132 S. Ct. 1235, 1244-1245, 182 L. Ed. 2d 47 (2012) (internal quotation marks omitted); see Ashcroft, 131 S. Ct. at 2085; Malley, 475 U.S. at 341.  "[A] case directly on point" is not required to show the right in question was clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft, 131 S. Ct. at 2083 (citing Anderson, 483 U.S. at 640; Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)); see Acosta, 718 F.3d at 824.

### b.    Analysis

Here, Plaintiff has alleged facts showing violations of "clearly established" federal law by defendants Drayton, Lawson, and Rush.  The Ninth Circuit has held it is clearly established that a prison official may not intentionally deny or delay access to medical care. Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002); see also Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir. 1992) ("A finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who *deliberately* ignore the

serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law."), overruled on other grounds by Colwell v. Bannister, 763 F.3d 1060 (9th Cir. 2014).  Defendants Drayton, Lawson, and Rush are all alleged to have violated such clearly established law by failing to provide Plaintiff with medical care after being placed on notice of his medical condition.  Thus, the FAC states violations of "clearly established" federal law by defendants Drayton, Lawson, and Rush.

Consequently, the Court concludes the FAC establishes the second prong of the qualified immunity analysis in regard to these three defendants.  Furthermore, because the Court already concluded in Section IV.B.2., that the FAC's allegations establish the first prong of the qualified immunity analysis, the Court finds defendants Drayton, Lawson, and Rush are not entitled to qualified immunity at this stage in the proceedings. See Butler, 370 F.3d at 963.

### 4.      Disposition of Defendants Drayton, Lawson, Garcia, and Rush's Motion to Dismiss

The Court finds both (1) that the FAC has stated a deliberate indifference claim against defendants Drayton, Lawson, and Rush and (2) that these three defendants are not entitled to qualified immunity at this stage in the proceedings.  Hence, the defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim against these three defendants is **DENIED**.

However, because the Court finds the FAC fails to state an Eighth Amendment deliberate indifference claim against defendant Garcia, the Court **GRANTS** the Motion as it pertains to him.  Dismissal of Plaintiff's Eighth Amendment claim against defendant Garcia shall be with leave to amend because the moving defendants have not shown any grounds for denying leave to amend, such as prejudice, bad faith, futility, or undue delay. See Cafasso v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) ("[L]iberality in granting leave to amend is subject to several limitations[,] . . . includ[ing] undue prejudice to the opposing party, bad faith by the movant, futility, and undue

1  delay.") (internal quotation marks and citation omitted).

2       Accordingly, the Motion to Dismiss filed by defendants Drayton, Lawson, Garcia,

3  and Rush is **GRANTED** in part and **DENIED** in part.[29]

4  **C.**     **Defendant Dr. Patel's Motion to Dismiss**

5       In his Motion to Dismiss the FAC, defendant Dr. Patel asserts two arguments[30]

6  regarding Plaintiff's Eighth Amendment deliberate indifference claim: (1) defendant Dr.

7  Patel cannot be sued under 42 U.S.C. § 1983 because he is not a state actor and did not

8  act under color of state law; and (2) Plaintiff has not pled sufficient facts to state a claim

9  for deliberate indifference, in violation of the Eighth Amendment.

10      **1.**     **Legal Standard on a Motion to Dismiss**

11       See Section IV.B.1. for a description of the legal standard on a Motion to Dismiss

12  under Federal Rule of Civil Procedure 12(b)(6).

13      **2.**     **Defendant Dr. Patel Acted Under Color of State Law**

14       To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts which show a

15  deprivation of a right, privilege or immunity secured by the Constitution or federal law

16  by a person "acting under color of state law." Lopez v. Dep't of Health Servs., 939 F.2d

17  881, 883 (9th Cir. 1991).  The U.S. Supreme Court has expressly held a private physician

18  under contract with a state to provide medical services to state prison inmates acts under

19  _____

20     [29]  In their Reply to Plaintiff's Opposition, defendants contend Plaintiff submitted a

21  declaration with his Opposition that cannot be considered when ruling on their Motion to
Dismiss.  Defs. Drayton, Lawson, Garcia, and Rush's Reply to Pl.'s Opp. at 2-4.  Because

22  the Court rules on the defendants' Motion to Dismiss without relying on the declaration,

23  the Court rejects the defendants' arguments regarding the declaration as moot.

24     [30]  Defendant Dr. Patel also claims Plaintiff's requests for punitive damages and

25  declaratory relief are improper, citing California Code of Civil Procedure sections 425.13

26  and 1062.5.  Def. Patel's Mot. to Dismiss at 9-10.  Because both of these state procedural
provisions expressly apply to claims against health care providers under California law,

27  the Court rejects these arguments.  See Cal. Civ. Proc. Code § 425.13; Cal. Civ. Proc.

28  Code § 1062.5.

"color of state law" when treating a prisoner.  West v. Atkins, 487 U.S. 42, 54, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).  Here, Plaintiff alleges defendant Dr. Patel was a private physician under contract with CDCR to provide medical treatment to state prisoners in Lancaster.  FAC ¶ 3.  Hence, Atkins clearly establishes defendant Dr. Patel acted under color of state law and may properly be sued under 42 U.S.C. § 1983.

### 3.    Plaintiff States a Viable Deliberate Indifference Claim Against Defendant Dr. Patel

#### a.    Applicable Law

See Section IV.B.2.a. for a general description of the two prongs of the Eighth Amendment deliberate indifference test.

Deliberate indifference "may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).  In either case, however, the indifference to the inmate's medical needs must be purposeful and substantial; negligence, inadvertence, or differences in medical judgment or opinion do not rise to the level of a constitutional violation.  Jackson v. McIntosh, 90 F.3d 330, 331 (9th Cir.), cert. denied, 519 U.S. 1029, 117 S. Ct. 584, 136 L. Ed. 2d 514 (1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981).  Hence, negligence constituting medical malpractice is not sufficient to establish an Eighth Amendment violation.  Toguchi, 391 F.3d at 1060. Nor is an inadvertent failure to provide adequate medical care alone sufficient to establish an Eighth Amendment violation.  Jett, 439 F.3d at 1096.

However, the Ninth Circuit and other federal Courts of Appeals have recognized deliberate indifference may be inferred where a physician repeatedly ignores a prisoner's complaints of pain, especially where the pain is excruciating.  See, e.g., Jett, 439 F.3d at 1097 (holding triable issue existed where inmate advised prison doctor of his need to see

orthopedist to set his fractured thumb and doctor did not respond); <u>Hunt v. Dental Dep't</u>, 865 F.2d 198, 201 (9th Cir. 1989) (concluding prisoner stated viable deliberate indifference claim against non-responsive physician assigned to treat prisoner's dental condition); <u>Harris v. Hegmann</u>, 198 F.3d 153, 159-60 (5th Cir. 1999) (concluding that allegations that medical providers ignored prisoner's repeated requests for medical treatment and complaints of excruciating pain satisfied the deliberate indifference standard); <u>Hudson v. McHugh</u>, 148 F.3d 859, 863-64 (7th Cir. 1998) (stating that "an inmate with a potentially serious problem repeatedly requesting medical aid, receiving none, and then suffering a serious injury" is "the prototypical case of deliberate indifference"); <u>see also</u> <u>Lancaster v. Monroe Cty.</u>, 116 F.3d 1419, 1425 (11th Cir. 1997) ("[A]n official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment.") (internal citations omitted); <u>Weyant v. Okst</u>, 101 F.3d 845, 857 (2d Cir. 1996) (jury could find official deliberately indifferent after he was informed of plaintiff's condition and then denied him care).

///

### b.   Analysis

Plaintiff has stated facts showing both the objective and subjective prongs of a deliberate indifference claim. First, Plaintiff's allegations demonstrate the existence of an objectively serious medical need. Plaintiff alleges his colon was bruised during his colonoscopy on March 8, 2013. FAC ¶ 8. This injury necessitated a major surgery on March 10, 2013 and resulted in the removal of the right side of Plaintiff's colon. <u>Id.</u> ¶ 24. Furthermore, Plaintiff claims he suffered severe abdominal pain and bleeding in the intervening days between March 8, 2013 and March 10, 2013, as a result of the injury. <u>Id.</u> at 10-13. These allegations establish an objectively serious medical need, as per the first prong of the deliberate indifference test. <u>See</u> <u>Lopez</u>, 203 F.3d at 1131 (noting serious medical needs are shown by the existence of injuries "that a reasonable doctor or

patient would find important and worthy of comment or treatment" as well as injuries

involving "chronic and substantial pain").

Second, in regard to the subjective prong, Plaintiff has alleged facts showing

defendant Dr. Patel acted with deliberate indifference when failing to treat him.  Plaintiff

alleges defendant Dr. Patel knew he had bruised Plaintiff's colon during the colonoscopy.

FAC ¶ 8.  Additionally, Plaintiff alleges defendant Dr. Patel knew or should have

known[31] that the bruising of Plaintiff's colon created a risk Plaintiff would bleed

internally or rectally.  Id. ¶ 9.  Plaintiff also informed defendant Dr. Patel he was

suffering from severe abdominal pain following the procedure.  Id.  Furthermore,

defendant Dr. Patel's own written instructions to Plaintiff after the colonoscopy list

"severe abdominal pain" after a colonoscopy as a symptom necessitating medical

attention.  Id. at 30.  Nevertheless, despite knowing these facts and despite hearing

Plaintiff's specific complaints of abdominal pain, defendant Dr. Patel failed to provide

Plaintiff immediate medical care.[32]  Id. ¶ 9.  If these allegations are true, defendant Dr.

---

[31]  The FAC states defendant Dr. Patel "knew *or should have known*" the bruising of
Plaintiff's colon created a risk Plaintiff would bleed internally or rectally.  FAC ¶ 9
(emphasis added).  Ordinarily, allegations that an official merely should have known of a
risk of harm would foreclose the official's liability under the Eighth Amendment.  See
Toguchi, 391 F.3d at 1057 ("If a prison official should have been aware of the risk, but
was not, then the official has not violated the Eighth Amendment, no matter how severe
the risk.").  However, here, Plaintiff has alleged *in the alternative* that defendant Dr. Patel
either knew *or* should have known of the risk of internal or rectal bleeding.  FAC ¶ 9.  In
the interests of construing the FAC liberally and allowing Plaintiff to proceed on his
deliberate indifference claim, the Court interprets such language as alleging defendant Dr.
Patel knew of the risk of internal or rectal bleeding.  See Woods v. Carey, 525 F.3d 886,
889-90 (9th Cir. 2008) (establishing courts' obligation to construe *pro se* complaints
liberally).

[32]  Defendant Dr. Patel attempts to characterize Plaintiff's deliberate indifference
claim as an incognizable medical malpractice claim.  Def. Patel's Mot. to Dismiss at 8.
Defendant Dr. Patel argues Plaintiff's claim merely challenges defendant Dr. Patel's
failure to properly perform a colonoscopy procedure and to diagnose Plaintiff's

1  Patel's knowing failure to treat Plaintiff for his abdominal pain after the colonoscopy

2  would constitute a "prototypical case of deliberate indifference." <u>Lancaster</u>, 116 F.3d at

3  1425; <u>see</u> <u>also</u> <u>Jett</u>, 439 F.3d at 1097.

4        Accordingly, defendant Dr. Patel's Motion to Dismiss is **DENIED**.[33]

5                                    **V.**

6                              **CONCLUSION**

7        IT IS THEREFORE RECOMMENDED that the Court issue an Order: (1)

8  accepting this Final Report and Recommendation; (2) **DENYING** defendants Drayton,

9  Lawson, and Garcia's Motion for Summary Judgment; (3) **GRANTING** in part and

10  **DENYING** in part defendants Drayton, Lawson, Garcia, and Rush's Motion to Dismiss;

11  and (4) **DENYING** defendant Dr. Patel's Motion to Dismiss.

12

13  DATED: May 29, 2015



14                                    HON. KENLY KIYA KATO
                                      United States Magistrate Judge
15

16  _____

17  perforated colon.  <u>Id.</u>  While defendant Dr. Patel is correct that medical malpractice does
    not give rise to liability under the Eighth Amendment's deliberate indifference standard,
18  <u>see</u> <u>Toguchi</u>, 391 F.3d at 1060, defendant Dr. Patel misstates the basis of Plaintiff's
    claim.  Plaintiff has not claimed defendant Dr. Patel acted negligently in conducting the
19  colonoscopy or in failing to diagnose the later problems with Plaintiff's colon.  Rather,
    Plaintiff's claim relies on allegations that defendant Dr. Patel did not treat Plaintiff
20  despite knowing he had bruised Plaintiff's colon during the colonoscopy procedure, that
    Plaintiff was at risk of bleeding internally or rectally, and that Plaintiff was complaining
21  of abdominal pain.  In short, Plaintiff's deliberate indifference claim rests not on
22  defendant Dr. Patel's negligence, but rather on defendant Dr. Patel's failure to act on
    Plaintiff's complaints despite knowing these facts.  Under Ninth Circuit precedent, these
23  allegations are sufficient to state a viable Eighth Amendment claim.
24

25  [33]  Because the Court denies defendant Dr. Patel's Motion to Dismiss without relying
26  on the declaration and exhibits filed by Plaintiff in his Opposition to defendant Dr.
    Patel's Motion, the Court **OVERRULES** defendant Dr. Patel's Evidentiary Objections
27  (Dkt. 53-1) to the declaration and exhibits as moot.
28